Andrew M. Wyatt, Esq.
State Bar No.: 158759
WYATT LAW
20750 Ventura Boulevard., Suite 440
Woodland Hills California 91364
Telephone: (818) 710-3813
Fax: (818) 710-1938

Attorneys for Plaintiff
CECILE WILLIAMS

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CECILE WILLIAMS, <br><br> Plaintiff, <br><br> vs. <br><br> UNITED ELECTRICAL, RADIO AND MACHINE WORKERS OF AMERICA, UE LOCAL 1018,  LOS ANGELES COUNTY DEVELOPMENTAL SERVICES FOUNDATION D/B/A FRANK D. LANTERMAN REGIONAL CENTER <br>     Defendants. | Case No.: <br><br> COMPLAINT (LMRA) <br><br> 1.  BREACH OF DUTY OF FAIR REPRESENTATION (UE, LOCAL 1018) <br><br> 2.  BREACH OF COLLECTIVE BARGAINING AGREEMENT (FRANK LANTERMAN REGIONAL CENTER) |

Plaintiff, CECILE WILLIAMS , alleges as follows:

## GENERAL ALLEGATIONS

1. Plaintiff, CECILE WILLIAMS [hereinafter "WILLIAMS" and/or "Plaintiff"), an individual, is and was at all times mentioned herein an individual, residing in the State of California in the County of Los Angeles.

2. Plaintiff is informed and believes, and thereon alleges, that at all times mentioned herein, Defendant UNITED ELECTRICAL, RADIO AND MACHINE WORKERS OF AMERICA, UE LOCAL 1018, [hereinafter "UNION" and/or "Defendant"], is and was at all times mentioned herein a labor organization representing employees, doing business in the State of California, County of Los Angeles .

3. Plaintiff is informed and believes, and thereon alleges, that at all times mentioned herein, Defendant LOS ANGELES COUNTY DEVELOPMENTAL SERVICES FOUNDATION D/B/A FRANK D. LANTERMAN REGIONAL CENTER [hereinafter "LANTERMAN" and/or "Defendant"], is and was at all times mentioned herein a corporation with employees, doing business in the State of California, County of Los Angeles .

4. On or about May 29, 2019, LANTERMAN and the UNION executed a collective bargaining agreement (hereinafter referred to as "CBA") covering terms and conditions of employment for employees of LANTERMAN including, among other provisions, a procedure for termination of employees in Article 19 of the CBA.

5. At all times mentioned herein, Defendants, and each of them, were the agents and employees of each of the Defendants, and were at all times acting within the course and scope of said agency and employment, and each Defendant has ratified and approved the acts of his agent.

6. That the true names and/or capacities, whether individual, corporate, associate, governmental or otherwise of Defendants Does 1 through 100, inclusive, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Each of the Defendants designated herein as a Doe is negligently or otherwise legally responsible in some manner for the events and happenings herein referred to and thereby proximately caused injuries and damages to the plaintiff as herein alleged. Plaintiff will ask leave of the Court to amend this complaint to show the true names and capacities of said DOES when the same have been ascertained.

7. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants are responsible in some manner for the occurrences alleged in this Complaint and the losses suffered by Plaintiff, and that Plaintiff's damages as alleged in this Complaint were proximately caused by their conduct.

8. Plaintiff is informed and believes and thereon alleges that at all times relevant to this action, the Defendants and Does 1 through 100, inclusive, and each of them, were the agents, representatives, partners and/or employees of one another, and in doing the things hereinafter alleged, were acting within the course and scope of such authority and employment and with the

LMRA COMPLAINT

3

permission and consent of the Defendants. Plaintiff is further informed and believes and thereon alleges that all actions of each Defendant was ratified by each other Defendant.

**LABOR MANAGEMENT RELATIONS ACT SECTION 301**

9. Section 301 of the LMRA allows for a suit against a union for violation of a contract as well as for an award of damages against the union.

10. Specifically, section 301 (a) of the LMRA, 29 U.S.C. sec. 185 (a) reads as follows: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties"

11. Section 301 (a) covers any contract that is: "an agreement between employers and labor organizations significant to the maintenance of a labor peace between them." *Retail Clerks International Association, Local Unions Nos. 128 and 633 v. Lion Dry Goods, Inc. et al,* 369 U.S. 17 (1962).

12. The contract between the parties is covered under section 301 (a) of the LMRA, 29 U.S.C. sec. 185 (a).

13. Where "the union representing [an] employee in [a] grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach

its duty of fair representation," the employee "may bring suit against both the employer and the union, notwithstanding the outcome or finality of the grievance or arbitration proceeding." *See DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 164 (1983). "Such a suit, as a formal matter, comprises two causes of action," specifically, a suit against the employer for breach of the collective bargaining agreement, pursuant to § 301 of the Labor Management Relations Act ("LMRA") ( 29 U.S.C. § 185), and a suit against the union for breach of the union's duty of fair representation, which "is implied under the scheme of the National Labor Relations Act" ("NLRA"). *See id.* The Supreme Court has held that the two claims "are inextricably interdependent"; to prevail against either the company or the union, the employee "must not only show that [his] discharge [or discipline] was contrary to the contract but must also carry the oftlineburden of demonstrating a breach of duty by the Union." See id. at 165 (internal quotations and citations omitted). Such a "hybrid § 301/fair representation claim," see id., is governed by a six-month statute of limitations borrowed from § 10(b) of the NLRA ( 29 U.S.C. § 160). *See DelCostello*, 462 U.S. at 170, 172.

14. It is well established that a suit for breach of contract based on a collective bargaining agreement is not subject to the *Garmon* rule and may be brought in state or federal court. (*Dowd Box Co. v. Courtney*, 368 U.S. 502, 503-506 [7 L. Ed. 2d 483, 484-486, 82 S. Ct. 519]; *Teamsters Local v. Lucas Flour Co.*, 369 U.S. 95, 101-102 & fn. 9 [7 L. Ed. 2d 593, 597-598, 82 S. Ct. 571]; *Smith v. Evening News Assn.*, 371 U.S. 195, 197 [9 L. Ed. 2d 246, 249, 83 S.

LMRA COMPLAINT

5

Ct. 267]; *Vaca v. Sipes*, 386 U.S. 171, 183-184 [17 L. Ed. 2d 842, 853-854, 87 S. Ct. 903]; *Consolidated Theatres, Inc. v. Theatrical Stage Employees Union*, 69 Cal. 2d 713, 722 [73 Cal. Rptr. 213, 447 P.2d 325]; *United Concrete Pipe Corp. v. Laborers' Local No. 89*, 231 Cal. App. 2d 315, 317-318 [41 Cal. Rptr. 816].) Since the complaint herein alleged a breach of the collective bargaining agreement by the employer, it is within the state court's jurisdiction.

## **FACTUAL ALLEGATIONS**

15. On 9/17/2019, Enrique Roman (Associate Director) and Karem Chacana (Human Resources Director) met with Plaintiff and Marc Baca (UE Local 1018 Steward) to terminate her employment. Enrique Roman and Karem Chacana gave Plaintiff her Annual Review Evaluation that was due in February, 2019. This was the first time Plaintiff received an unsatisfactory grade. Plaintiff worked at Lanterman for over 15 years and had received exemplary reviews and received annual merit-based pay increases. Prior to becoming a whistleblower, her personnel file demonstrated that she received "superior and satisfactory plus" reviews for nearly decade and half. It also includes only the time records her supervisors reviewed, approved and signed off on, and no time records documenting alleged tardiness or unapproved overtime upon which the supplemental paychecks were issued. There is no record of counseling or discipline of any kind prior to Plaintiff becoming a whistleblower, and no record of any complaints about her prior to her becoming a whistleblower.

16. Plaintiff's case did not merit immediate termination and Management breach the Collective Bargaining Agreement by bypassing progressive discipline, it had no grounds for discipline to begin with. The terms of the May 21, 2019 Formal Counseling Memo could not be satisfied since its inception. The Memo stated that on Wednesdays and Fridays for 90 days, were to be set aside to do 210-315 hours of reports (105 reports which are three hour tasks if it is a triannual report and two hour tasks if regular; Service Coordinators regularly log the time tasks take to complete). Wednesdays and Fridays for 90 days comprise only a maximum 192 hours if breaks are skipped and all 8 hours in the work were exhausted. Was not allowed to fall behind on current work though as Plaintiff had only Mondays after 10AM to do current work – a maximum of 3/10 the time Service Coordinators generally have for current work. On Thursdays, Plaintiff was only allowed to work when there were no team meetings or staff training. Thursdays was also the only day that Plaintiff had to do all of the other case management work that Management had prohibited from performing the other days, which encompasses anything from sending out referral packages, closing Special Incidents Reports, meeting with consultants, reviewing case records for upcoming meetings, requesting records of hospitalizations for the clinical department for review, preparing client documents for scanning, mailing documentation to families/clients, returning phone calls and having all of her upcoming meetings confirmed so that she could submit her upcoming weekly schedule by 2PM on Thursdays. The Memo states that Plaintiff needed to have the Annual Review meetings with her parents and clients on

LMRA COMPLAINT

7

Mondays and Tuesdays only, if a parent or client could not meet on either of those days, Plaintiff needed to receive permission from Management. No days were allocated to attend Court or School meetings with her families. It also did not allocate time to deal with emergencies. The Memo also provided contradicting expectations, it states that Plaintiff was expected to return phone calls within a 24 hours period and promptly act on requests, when at the same time, they had assigned Thursday afternoon as the day to return phone calls. They also allocated Mondays as the day that Plaintiff processed funding requests when it was one of the two days that was instructed to have Annual Review meetings.

17. Management job obstruction dates back to when Plaintiff became a whistleblower in May 2018. Management impeded her work by denying Plaintiffs work-at-home requests, not approving funding authorizations, denying to fund placements, canceling meetings with families, not including Plaintiff on meeting to close Special Incident Reports, falsely blaming her for mistakes such as not having funding completed when they had refused to process it, not having a client placed when they had denied funding the placement, not having reports completed or meetings conducted when Management had created difficulties for these to be done.

18. At the end of the Counseling Memo, Management determined that Plaintiff had failed to meet the goals of the Counseling Memo and terminated her employment. Management fabricated demonstrably false allegations to create a pretext for her wrongful termination and violated the Union Contract by failing to follow the steps of Progressive Discipline.

19. Management basically is alleging 4 broad categories for her termination: 1)Failure to produce 400 ID Notes on a monthly basis; 2) Tardiness, Unauthorized Overtime and Unaccounted work time-Falsifying Time Records; 3) Numerous Parent Complaints substantially claiming that Plaintiff did not answer her phone and return phone calls; and 4) Did not process Purchase Of Services (POS) request timely.

20. As for Item #1: Failure to produce 400 ID Notes on a monthly basis is basically inaccurately as they failed to take into account vacation/holiday/sick and personal time off for the Tittle 19 ID Notes. In addition Management simply lied that Plaintiff did not meet the required ID notes (400 units) during the Counseling period. In fact, she consistently had the highest or second highest number of units amount Service Coordinators in her unit every full month (May 2019, 694 Units; June 2019, 574 Units; Aug 2019, 596). In July 2019, Plaintiff was approved for over a week of vacation but still had the highest number of units of Service Coordinations among the Service Coordinators who took vacations (383 units as she was on vacation for over a week.) Management also averaged 18 months (Feb 2018 to Aug 2019) of ID Notes that was inaccurate as they failed again to take into account vacation/holiday/sick and personal time off during the 18 months.

21. As for Item #2: Tardiness, Unauthorized Overtime and Unaccounted work time-Falsifying Time Records was also inaccurately as the Industrial Wage Order 4-2001 (Professional, Technical, Clerical, Mechanical and Similar Occupations) 7 Record (d) requires

"Clocks shall be provided in all major work areas within reasonable distance thereto insofar as practicable." Whatever alternative time recording system they are pretending to have used to base these allegations on was never negotiated. In addition Enrique Roman suggested that they used Client ID notes to determine when Plaintiff was coming in late to work, working unapproved OT and had unaccounted time. Previously, Enrique Roman and Karem Chacana stated to her and Marc Baca that they had used key card records from the employee parking garage entrance and exit. After Plaintiff became a whistleblower, Management reviewed her key card records for the previous year, disregarding the timesheets reviewed, approved and signed by her supervisors and accused Plaintiff of tardiness whenever her car was not in the garage and of unapproved overtime whenever her car was in the garage.

22.     As for Item #3: Numerous Parent Complaints substantially claiming Plaintiff did not answer her phone, return phone calls. These alleged complaints demonstrates that Management failed to proactively deal with the alleged complaints at the time they were alleged to occur. The complaints dated back half a year in some cases and had never been mentioned prior to Management's whistleblower retaliation and fabrication of a pretext to fire her. Management also fabricated complaints or falsely blamed Plaintiff for the parent and client complaints. In addition to the alleged complaints that Management listed in the Memos, Jocelyn would constantly obstruct Plaintiff's work by instructing her not to complete certain case management duties and later would falsely claim that the family had complaints about her and

LMRA COMPLAINT

10

wanted a change of service coordinator for failing to act on their requests. In addition after the Plaintiff became a whistleblower, she reported to Management and IT that her voicemail and email were continuously full. When she asked for support in this matter, she was informed that no-one else in the Center was having the problem. The Plaintiff also reported the phone and email problems to the Union and they did not do anything about it either. On 12/5/2019, during a meeting with Marc Baca and Stephen Cutty, Marc informed Cutty that Management changed the phone and Internet system and added "the agency has acknowledge that there is a problem with the connections between voicemail, phone and emails." Cutty asked how long did that go on and Marc answered that it was still happening.

23.     As for Item #4: Didn't process POS request timely.

Management dictated what Plaintiff was to do each week in detail. She had no discretion to work on any tasks outside of what Management directed her to do. If she did not completed certain tasks during a specific time frame or prioritized work responsibilities while on the Counseling Memo is because Management did not instructed her to do so. The Plaintiff was also unable to complete more work because the Counseling Memo was unachievable and therefore ran out of regular working hours to complete more work. The funding requests that Management blamed Plaintiff that she failed to process them according to Lanterman Policy, they were all approved by Katie and Jocelyn without any issues and later claimed in the Termination Memo that she had done them incorrectly.

24. On April 27, 2020, Plaintiff emailed the Union the following:

"The fact is that the allegations Management actually made to justify its termination are false, and, even if they were true, my termination was wrongful because Management violated the Contract by refusing to follow the Progressive Discipline steps it contractually agreed to follow.

This is the case. It is a strong case. Management would have to prove both that its allegations were true AND that it did not break the contract. But, it did not. Management put me on a counseling plan without first giving a warning as required by the Contract, and then it immediately fired me allegedly for those same issues bypassing the progressive discipline steps required by the Contract. This is not a contested fact. Management has not even attempted justifying bypassing progressive discipline. It cannot. Management itself deemed the issues unworthy of immediate termination for months while I was on the counseling plan. It had already determined that those issue require progressive discipline so it put me on a counseling plan. It cannot then turn around and say those issues are so dangerous that they require immediate termination. It had already established that they do not, and it had proven that they were not dangerous at all by having me remain an employee while it carried out its charade of pretending to give me a chance. Management's case is lost even without consideration of the allegations. Management has refused to demonstrate any of those allegations. Management has refused to allow the allegations to be investigated. Management cannot prove the allegations as

LMRA COMPLAINT

12

is its burden, not mine. Nonetheless, the allegations are demonstrably false or outright lies. Management has no case. At every step, it is prima facie defeated.

That is the case. That is the case to be arbitrated, and it the case that that employees should be interested in. It's not about me. It's about us. We have a Union and a Contract so that Management has to follow it and be held accountable. If not, there is no point. If we just let this matter go, we will be signing off on Management ignoring the contract whenever it pleases. We will be signing off on allowing Management making up allegations out of thin air and defaming employees. Management will be empowered to do the same thing to anyone else, whether you are whistleblowers like me, active with the Union, simply disliked by Management because you ask too many questions, are older than Management would prefer, or were never formally educated in a language you are conversationally proficient and have the audacity to expect pay for the work you do with it, or Management just wants another job opening for their family and friends who are out of work. Employees need to be thinking of themselves and each other in deciding whether to demand arbitration or to empower Management to do whatever it wants without accountability and action.

I do hope to get some justice for me, but what is at stake is much greater. Arbitration will not bring any justice regarding the whistleblower matters. That case is being investigated by the Department of Labor, and is something I have to pursue on my own. It is not the case before arbitration. It is the context. It's an aside for employees to understand why Management

LMRA COMPLAINT

13

wrongfully terminated me and when it did, why it breached the Contract bypassing progressive discipline, why Management fabricated allegations and created a mathematically unfeasible plan and went through the charade of "helping" me. It is the explanation for why, when the Union made Management aware of these matters, Management did not contest anything but instead invited me to a settlement conference, and why Management refused job reinstatement inspite of these facts. Still the explanation for why Management breached the contract and lied doesn't have any affect on the fact that Management breached the contract and lied. Those facts are the only thing that matters in the case to be arbitrated."

25. On 5/1/2020, Plaintiff received from the Union the following email:

"I write, at the request of the UE Local 1018 Executive Board, to inform you that a majority of the UE Local 1018 members voted to not take your case to arbitration. I can imagine this is very difficult news. This decision is the democratic expression of the membership. I wish you the very best in your future employment pursuits. Thank you, /s/ J Burger"

**FIRST CAUSE OF ACTION
BREACH OF DUTY OF FAIR REPRESENTATION
(PLAINTIFF AGAINST UNION AND DOES 1 THROUGH 100**)

26. Plaintiff restates and re-alleges the foregoing paragraphs of this Complaint as if fully set forth herein.

LMRA COMPLAINT

14

27. By virtue of the foregoing facts, UNION has arbitrarily, discrimnatorily, and/or in bad faith, breached the duty of fair representation to Plaintiff.

28. As a result of UNION's wrongdoing, Plaintiff has been injured, the termination process has been seriously undermined, and the termination must be vacated.

**SECOND CAUSE OF ACTION**
**BREACH OF THE COLLECTIVE BARGAINING AGREEMENT**
**(PLAINTIFF AGAINST STE AND DOES 1 THROUGH 100)**

29. Plaintiff restates and re-alleges the foregoing paragraphs of this Complaint as if fully set forth herein.

30. By virtue of the foregoing facts, LANTERMAN violated the Labor Management Relations Act by breaching the collective bargaining agreement between it and UNION when it terminated Plaintiff without just cause.

31. Asa result of LANTERMAN's breach, Plaintiff has been injured, the termination process has been seriously undermined, and the termination must be vacated.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court enter judgment as follows:

A. Finding that Defendant UNION has breached its duty of fair representation to Plaintiff;

B. Finding that Defendant LANTERMAN has breached the collection bargaining

LMRA COMPLAINT

15

agreement;

C. Vacating the decision of termination and awarding Plaintiff back pay;

D. For costs of suit and reasonable attorney fees incurred herein as allowed by law;

E. For any other and further relief as the Court may deem just and proper.

Dated: October 27, 2020                    WYATT LAW

*"/s/" Andrew M. Wyatt*
By:_____
ANDREW M. WYATT
Attorney for Plaintiff
Cecile Williams

LMRA COMPLAINT

16